322 So.2d 195 (1975)
STATE of Louisiana
v.
Larry COLEMAN and Leonard Pearley.
No. 56418.
Supreme Court of Louisiana.
November 4, 1975.
Rehearing Denied December 5, 1975.
*196 Normand F. Pizza, Reuter & Reuter, New Orleans, for defendants-appellants.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Harry F. Connick, Dist. Atty., Louise Korns, Asst. Dist. Atty., for plaintiff-appellee.
BARHAM, Justice.
Defendants were charged by bill of information with the simple burglary of the apartment of Charles Kelly. After trial of the matter, defendants were convicted and sentenced to serve nine years in the custody of the Director of the Department of Corrections. This is an appeal from those convictions and sentences.
On March 26, 1973, Mr. Charles Kelly and his wife returned to their home from shopping and found the back door to their apartment open. They discovered that a stereo, some clothes, a television, a tape recorder, and other items were missing. They reported the incident to police and the subsequent investigation revealed that a neighbor, Mrs. Jo Ann Walker, had seen two black men with knit caps carrying the stolen goods out of the house. Mrs. Walker testified that the men loaded the items in a maroon car with a white top, which was parked in front of the Kelly apartment.
Three days later, on March 29, 1973, Mr. Kelly, home during his lunch hour, and his wife noticed that a maroon and white car fitting the description given by Mrs. Walker had just parked outside their apartment. One of the two men in the car approached the door to Kelly's apartment and knocked. Kelly remained quiet and the party knocked again. After no answer was received, he went next door and knocked on the door to that apartment. Kelly testified that when the man received no answer there he began walking back down the steps. At that point, Kelly walked out of his front door with a gun, "jammed him," and asked what he was doing there. He also forced another man to get out of the car. The defendants said that they were looking for a girl named Myra who did not, in fact, live in either building.
Shortly thereafter, the police were called and Mrs. Walker, who had witnessed the burglary, came over and identified the two men as the ones she had seen on the previous occasion.
Defendants assigned three errors. However, the first and second assignments were neither briefed nor argued, and they are thus deemed abandoned. State v. Richmond, 284 So.2d 317 (La.1973).
The third assignment of error, the only one that we consider, is an objection to the trial court's refusal to grant a new trial on the ground that the verdict was contrary to the law and the evidence. In support of *197 his allegation that the verdict is contrary to the law and the evidence, defendants submit the following particulars: (a) defendants established an alibi that was not rebutted; (b) the State's witness could not positively identify the defendants as the perpetrators of the crime; (c) the State did not prove guilt beyond a reasonable doubt; and (d) the court erred by not issuing a directed verdict of acquittal as dictated by the evidence.
We are limited on review to a determination of whether, as a matter of law, there is no evidence to support the conviction. State v. Douglas, 278 So.2d 485 (La.1973). A perusal of the record indicates clearly that there was some evidence that the crime had been committed by defendants; therefore, it was not error for the trial judge to fail to direct a verdict for defendants or refuse to grant them a new trial on a factual basis.
Defendants argue that State v. Douglas, supra, and its progeny, which set forth this Court's role in reversing rulings refusing directed verdicts, no longer control this issue because Article XIX, § 9 of the 1921 Louisiana Constitution has been repealed by the Louisiana Constitution of 1974. It is thus argued that La.C.Cr.P. art. 778 (allowing a directed verdict "if the evidence is insufficient to sustain a conviction") and art. 851 (allowing a new trial when the "verdict is contrary to the law and the evidence") should be applied literally without the "no evidence" gloss superimposed by Douglas.
We do not reach this issue because the new constitution did not become effective until January 1, 1975. The operative facts and the trial of this case occurred in 1973, long before the effective date of the new constitution.
For the reasons assigned, defendants' convictions and sentences are affirmed.
DIXON, J., concurs.