333 So.2d 223 (1976)
STATE of Louisiana
v.
Alvin JOHNSON and Isiah Smith.
No. 57299.
Supreme Court of Louisiana.
May 17, 1976.
Rehearing Denied June 30, 1976.
*225 Numa V. Bertel, Jr., Orleans Indigent Defender Program, New Orleans, for defendants-appellants.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Harry F. Connick, Dist. Atty., Louise S. Korns, Asst. Dist. Atty., for plaintiff-appellee.
DIXON, Justice.
Defendants were convicted of armed robbery and sentenced as multiple offenders. They appeal their convictions and sentences, raising seventeen assignments of error. Because we find reversible error in none of them, we affirm.
Assignments of Errors Nos. 1 and 2
In their first two assignments defendants urge this court to extend the rights of discovery in criminal cases. In their pretrial motion for a bill of particulars and prayer for oyer, defendants requested the following information:
"1. An exact description of the type of weapon seized;
"2. The age of the victim;
"3. The names of witnesses by whom the defendant was identified;
"4. The names of all other witnesses; and
"5. All oral statements made by the defendant."
The State refused to provide the information and the trial court agreed.
A defendant claiming self-defense to a charge of homicide is entitled to information regarding any dangerous weapon found on or nearby the deceased. State v. Woodruff, 281 So.2d 95 (La.1973). Due process and fundamental fairness require that a defendant charged with homicide be given the right to choose his own ballistics expert to examine the alleged murder weapon and bullet in order to rebut testimony by the State's expert witnesses. Barnard v. Henderson, 514 F.2d 744 (1975).
But defendants in the case before us only argue that liberal discovery is the better practice. That question is not before us. This State has not adopted liberal discovery in criminal cases, and this court has only extended the right of pretrial discovery of the State's evidence in cases where the failure might seriously handicap the defense. There is no showing in this case that the failure of the State to describe *226 the gun handicapped the defense in any way.
These assignments are without merit.
Assignments of Errors Nos. 5, 6, 8 and 27
In each of these assignments defendants contend they were deprived of their rights under Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). Assignments 5, 6 and 8 concern failure by the victims to identify defendants at a pretrial line-up. Assignment 27 concerns a prior inconsistent statement made by one of the State's witnesses.
In advance of the motion to suppress the identification, defendants requested all exculpatory information in the State's possession. The State responded that it had none.
During the motion to suppress the identification, Sergeant Orin Mills and Detective Rhett Magnon, who conducted the line-up, testified that only one of the victims could identify Johnson and that neither victim could identify Smith. Defense counsel then asked the trial court to "apply the sanctions [of Brady v. Maryland, supra] and dismiss the prosecution because [the prosecution] has withheld that fact." The trial court refused to dismiss the charges.
The information that neither victim could identify Smith and that only one could identify Johnson might indeed be "exculpatory" and defendants might have had a right to such information after their request. Brady v. Maryland, supra. However, we find that this information, rather than being suppressed, was furnished in ample time. The motion to suppress the identification was heard on July 19, 1974, eleven days prior to the July 30, 1974 trial. The officers' testimony at the motion to suppress amply notified defendants of the results of the line-up. Nor is there any showing that this notice was inadequate.
In any event, it is clear under Brady that defendants were not entitled to dismissal of the charges against them. Because there has been no showing that the time or manner of disclosure prejudiced defendants, we hold that the disclosure during the motion to suppress accorded defendants their full rights under Brady.
During the State's case in rebuttal, Deputy William Taylor, Sr. testified he saw Smith and Johnson on May 10, 1974. According to Taylor's testimony, Smith approached him and said, "Well, if anybody asks you where I been all day, just tell them I been with you all day." Later that evening, Taylor visited Smith's home. When he arrived there were as many as three plain-clothesmen inside. He told them he had been with Smith and Johnson from 12:00 noon until about 5:30 p. m. Moments later he told one of the officers he had lied and that he had not been with the defendants all day. Detective Magnon included this in his report.
When asked during direct examination why he had said both defendants were with him that day, Taylor explained that his statement was made to Smith's sister, as a favor to Smith, in response to a question she asked. Taylor further explained that though the plain-clothesmen were in the room, they had not identified themselves to him and he did not know who they were. It was not until he stepped outside that he was informed by one of the officers they were detectives investigating an armed robbery. At this time Taylor revealed he had lied.
On cross-examination Taylor was again asked whether he had lied. He admitted that he had and reiterated his explanation. Defendants then moved for production of the State's documentation of these prior inconsistent statements: Detective Magnon's report. The trial court refused defendants' motion. We agree.
Defendants do not contend that the prior inconsistent statement in Detective Magnon's report is different from the prior inconsistent statement admitted under oath *227 by Taylor. Were they to do so, a different situation might present itself.
R.S. 15:493 provides:
"Whenever the credibility of a witness is to be impeached by proof of any statement made by him contradictory to his testimony, he must first be asked whether he has made such statement, and his attention must be called to the time, place and circumstances, and to the person to whom the alleged statement was made, in order that the witness may have an opportunity of explaining that which is prima facie contradictory. If the witness does not distinctly admit making such statement, evidence that he did make it is admissible."
Because the witness did distinctly admit making the prior inconsistent statement, evidence that he did make it, e. g., Detective Magnon's report, is inadmissible. Thus the report is not evidence which Brady refers to as "material," and Brady does not require that defendants be given a copy of Magnon's report.
These assignments lack merit.
Assignments of Errors Nos. 10 and 12
These assignments concern the identification of Smith by the liquor store teller.
The victim was brought to a line-up on May 21, 1974. A total of eight persons participated in the line-up; each person faced the victims, then turned to show a profile view. Each member of the line-up was compelled to place a wig on his head and recite the following sentence: "Give me the money out of the register and act normal." After the victims left the room a photograph of the line-up was taken.
Immediately subsequent to the line-up, the teller said she wasn't sure and could not make an identification. The owner of the liquor store could identify only Johnson.
Sometime after his line-up proceeding but before trial, the teller visited the district attorney's office and was shown two photographs: one of Smith and one of Johnson. They were not shown to her among a group of photographs; rather, they were the only pictures she saw. The teller then recognized Smith as one of the four men who had robbed her. She was also shown the photograph of the line-up, and she selected Smith from that picture.
At trial the victim identified Smith as being a participant in the robbery. On cross-examination defense counsel attempted to bring out facts concerning the nature of the two photographs from which the identification was made. He asked whether there were numbers printed on the pictures shown her. Apparently, defense counsel wished to attack the photographic identification procedure as being unduly suggestive not only because the victim was shown only two pictures but also because the photographs were "mug shots," therefore suggesting the suspects had previous criminal records.
The State objected to defense counsel's questions, and the jury was removed. The State urged that the fact that the photographs were mug shots was inadmissible (see State v. Price, 325 So.2d 780 (La.1975)). Defense counsel responded that any right not to have the "mug shot" nature of the photographs revealed to the jury was waived. The trial court refused to accept the waiver and sustained the State's objection.
A conviction based on eyewitness identification at trial following a pretrial identification by photograph will be set aside on that ground only if the photographic identification procedure was so impermissibly suggestive as to give rise to a substantial likelihood of irreparable misidentification. Simmons v. United States, 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968).
While the practice of showing a suspect singly to persons for the purpose of identification, and not as part of a *228 line-up, is not favored, whether an impermissibly suggestive identification occurs depends on all the circumstances. State v. Moseley, 284 So.2d 749 (La.1973); State v. Newman, 283 So.2d 756 (La.1973); Neil v. Biggers, 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972); Kirby v. Illinois, 406 U.S. 682, 92 S.Ct. 1877, 32 L.Ed.2d 411 (1972); Simmons v. United States, supra.
The trial court erred in prohibiting defense counsel from eliciting facts surrounding the out-of-court photographic identification. The presentation to the victim of two photographs, one of each defendant, after defendants had been taken into custody is not lightly to be condoned. The potential for misidentification is strong, especially where the photographs shown are mug shots, which tend to connect the defendant with other criminal proceedings. Defense counsel should not have been prevented from showing the possible taint of the out-of-court identification.
However, even if the out-of-court identification was tainted, if the in-court identification had a source independent of the out-of-court identification, the in-court identification does not violate defendant's due process rights. Coleman v. Alabama, 399 U.S. 1, 90 S.Ct. 1999, 26 L.Ed.2d 387 (1970); Simmons v. United States, supra; State v. Newman, supra; State v. Amphy, 259 La. 161, 249 So.2d 560 (1971).
The record before us reveals the following facts.
At 2:00 p. m. on May 10, 1974, four men entered the Continental Liquor Store. They ordered the teller to act naturally and to continue to wait on customers; they ordered her to give them "just the paper money." The robbers were in the store for ten minutes or more. Each man wore a wig when he entered. Two remained in the front of the store while the other two jumped behind the counter. During most of the time they were in the store, they obscured their faces behind their wigs. However, as they were leaving, the last robber, whose face was no longer hidden by his wig, came close beside the teller and ordered her to lie down.
At trial the teller testified she looked directly at the robber who told her to lie down, the lighting was good, and she was positive Smith was the robber who ordered her down. She also testified that her initial failure to identify Smith stemmed from her fear for her safety. She feared repercussions by the robbers who were not apprehended.
Accordingly, we find the in-court identification was based on an independent source and was free of any taint caused by the pretrial photographic identification.
These assignments present no merit.
Assignment of Error No. 11
In this assignment defendants complain the trial court erred when it curtailed the cross-examination of Dolores Cooper relative to her psychiatric background. However, rather than brief this contention to this court, defense counsel merely submits it "on the face of the record." Assignments of errors neither briefed nor argued are deemed abandoned. State v. Coleman, 322 So.2d 195 (La.1975); State v. Reed, 324 So.2d 373 (La.1975).
This assignment is without merit.
Assignment of Error No. 14
This assignment was preserved during the following cross-examination of Detective Magnon concerning an alleged confidential informer:
"Q Now, that man gave you certain information about this case, the perpetrators in this case?
"A Yes, he did.
"Q Is that man's name on this witness list?
"A No, it is not.
"Q Is that man's name in your report?

*229 "A No, it is not.
"Q You deliberately withheld it?"
The prosecution objected that the officer need not reveal the name of his confidential informant. See Rugendorf v. United States, 376 U.S. 528, 84 S.Ct. 825, 11 L.Ed.2d 887 (1964); State v. Thorson, 302 So.2d 578 (La.1974). Defense counsel responded that there had been no showing that the alleged informer had the "reliability" necessary to qualify him as a confidential informant.
We note at the outset that defendants do not contend the informant's reliability was inadequate to sustain a finding of probable cause for the issuance of a warrant. Aguilar v. Texas, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964). Though it is difficult to discern, it appears from the record that defense counsel's complaint is centered about the allegation that Detective Magnon deliberately withheld the name of the informer, and that defendants were entitled to the name in lieu of an adequate showing that the alleged informer was indeed "reliable."[1]
But counsel does not contend that the informer could provide "exculpatory" testimony. Brady v. Maryland, supra; indeed, according to Magnon's testimony, the confidential informer was an eyewitness to the armed robbery and identified Smith as being a participant therein. Nor does counsel contend the informant's identity is essential to adequately prepare the defense. State v. Thorson, supra. There is no obligation to disclose the names of every person who possesses information about an offense.
This assignment lacks merit.
Assignments of Errors Nos. 15, 22, 23, 24 and 28
Each of these assignments concerns alleged prejudicial remarks made by the prosecutor.
During cross-examination of Detective Magnon, defense counsel asked the ages of the persons present in the home when defendants were arrested. The State objected that the question lacked relevancy. The following colloquy transpired:
"BY THE COURT: I don't see the relevancy of the ages and the number of these people in the house, especially the children, unless you can show me some relevancy.
"BY MR. JOHNSON: Sir, if I have a twelve year old child that witnessed what happened in there.
"BY THE COURT: If you have the witness, put him on.
"BY MR. JOHNSON: I don't know who was in there. I'm asking him.
"BY MR. MOORE: Your Honor, the best place he can find out is from his own client."
Defendant requested a mistrial, arguing Mr. Moore's statement was a comment on his failure to take the stand. From the trial court's refusal of this motion, Assignment No. 15 was taken.
Upon motion by defendant, a mistrial shall be declared where the prosecutor comments on defendant's failure to testify. Griffin v. California, 380 U.S. 609, 85 S.Ct. 1229, 14 L.Ed.2d 106 (1965); La.C.Cr.P. 770.
Here, however, defendants did testify, and it is not argued that the prosecutor's remark in any way compelled this *230 testimony. Nonetheless, the remark did not direct the jury's attention to defendants' failure, or anticipated failure, to testify.
Assignment 15 lacks merit.
Assignments of Errors Nos. 22, 23 and 24 were reserved during the State's cross-examination of defendant Smith. Each concerns alleged prejudicial remarks or questions by the prosecutor.
Assignment No. 22 was reserved when the prosecution asked the following question:
"Q. Mr. Smith, you heard Fred Manthey identify you as one of the perpetrators of the armed robbery of the Continental Liquor Store?"
In fact, Manthey had been unable to identify Smith as one of the robbers. Defense counsel objected to the question and moved for a mistrial. The trial court denied the motion: we agree.
Defendant has not argued that the question was propounded in bad faith. The question came within the scope of C.Cr.P. 771, allowing a mistrial only if the trial court is satisfied an admonition to the jury cannot assure a fair trial. Any misleading tendency was corrected by defendant's contemporaneous objection which reminded the jury that no identification had in fact been made. Though the trial court gave no admonition, defendant did not request one; hence, he has no complaint. State v. Knight, 323 So.2d 765 (La.1975).
Assignment No. 23 stems from the following cross-examination:
"Q. Are you the same Isiah Smith, Jr. that was convicted of burglary in 1961 and received three years in the Louisiana State Penitentiary?
"A. Right.
"Q. Are you the same Isiah Smith, Jr. that was convicted of simple burglary and received six months, six years in the Louisiana State Penitentiary?
"A. Right.
"Q. Mr. Smith, aren't you a thief?
"BY MR. JOHNSON: I object to that, sir.
"BY THE COURT: Objection sustained."
And later in cross-examination with respect to Smith's failure to subpoena alleged alibi witnesses:
"Q. Knowing all the time that they may be able to vouch for you?
"A. I knew the majority of them had records and you would call them thieves just like you called me.
"Q. But you are a thief, aren't you?"
Assignment No. 24 stems from the following cross-examination:
"Q. Let me ask you this. Wouldn't you have viewed yourself more of a man if you would have said, "Police, this is the stuff. I don't want to get hung up with that. I'm going to walk a straight line.' Wouldn't it have been more reasonable to do that than to take it?
"A. Well, Deputy Taylor is a friend of mine. He was a deputy back here. He could have gave me some advice on something to do. It's just like my position was just like a junky needing a fix.
"Q. Are you a junky?
"A. No.
"Q. How do you know how a junky feels?
"BY MR. JOHNSON: I object, sir. Even the mention of narcotics is prejudicial.
"BY MR. MOORE: He's the one that mentioned a junky.
"A. I've lived with them. I've lived around them."
*231 Defendants objected and requested a mistrial. The State argued the questions were permissible because Smith first made reference to "thief" and "junky."
The prosecutor's question whether Smith was a thief was inappropriate; the relevant evidence was Smith's prior convictions, and that had been adduced. The fact that the prosecutor repeated the improper question casts serious doubt on the possibility that it was made unwittingly. Smith referred to the accusation that he was a thief only after the State had first propounded the improper question and objection to the question had been sustained. Thus we cannot approve the all to facile contention that Smith's reference to the previous improper question made a proper question out of an improper one. As a matter of trial conduct, this type question should not be countenanced. Louisiana Code of Professional Responsibility, Disciplinary Rule 7-106(C)(2) (6). As to the question whether Smith was a "junky," we find that too was improper. Smith's original reference was merely by way of analogy, a figure of speech. The use of such figurative speech cannot be said to make Smith's being a "junky" a material issue. R.S. 15:435.
Yet we are convinced the trial court acted within its discretion by not ordering a mistrial. The remarks did not fall within the scope of C.Cr.P. 770, which makes a mistrial mandatory for certain comments. Rather, the remarks came within the scope of C.Cr.P. 771(1):
"In the following cases, upon the request of the defendant or the state, the court shall promptly admonish the jury to disregard a remark or comment made during the trial, or in argument within the hearing of the jury, when the remark is irrelevant or immaterial and of such a nature that it might create prejudice against the defendant, or the state, in the mind of the jury:
"(1) When the remark or comment is made by the judge, the district attorney, or a court official, and the remark is not within the scope of Article 770."
The trial court was satisfied the questions would not deprive defendant of a fair trial and defendant requested no admonition.
Assignment No. 28 concerns the following comments by the prosecutor during closing argument:
"... Now, here we have two men who take the stand. Alvin Johnson was convicted of manslaughter, or killing somebody. Isiah Smith was convicted of two burglaries, a thief, an armed robber, rather a thief and a murderer. Now, who are you going to believe? Are you going to believe the civilian witnesses, Fred Manthey, Dolores Cooper, the police officer who are sworn to uphold the law, or are you going to believe a thief and a murderer?"
Defense counsel objected to the reference to Johnson as a murderer and again moved for a mistrial. The trial court denied the motion but did instruct the jury that it was to ignore the reference to Johnson as a murderer.
In referring to Johnson as a murderer, the prosecutor was referring to Johnson's conviction for manslaughter, which conviction had been properly admitted into evidence. Thus the comment was not within the scope of C.Cr.P. 770, and the trial court's admonition cured any defect caused by the prosecutor's remark.
These assignments lack merit.
Assignment of Error No. 33
This assignment concerns the trial court's refusal of defendants' motion for a new trial. In brief to this court defendants contend the motion should have been granted for reasons raised in other assignments *232 and because the verdict was contrary to the law and the evidence.
Because the defendants' other assignments present to merit and because the allegation that the verdict is contrary to the law and the evidence presents nothing for review, State v. Williams, 262 La. 160, 262 So.2d 507 (1972), this assignment lacks merit.
Assignment of Error No. 36
In this assignment, Johnson contends he was improperly sentenced under the habitual sentencing statute, R.S. 15:529.1. The State offered into evidence a booking sheet and a fingerprint card bearing the name Alvin Johnson; Johnson's fingerprints were taken in the courtroom. Johnson objected that the State's fingerprint expert failed to follow correct fingerprinting identification procedures. The basis of defendant's complaint was that the expert did not recite the number of "identification points" upon which his identification was based.
The expert testified that he had been trained at the F.B.I. school, that he had been working in his field for five years making thirty fingerprint identifications per week, and that he had been accepted in at least three courts as a fingerprint expert. He further testified that the procedure he used in court was the procedure he used in his laboratory work and that he was positive the Alvin Johnson in court was the same Alvin Johnson referred to in the State's evidence. He testified he was certain of the identification regardless of the fact that he had not counted the number of similar points of identification.
Based on the expert's testimony in support of his identification and the lack of any evidence to show his methods were improper, we find no error in the admission of the evidence of the fingerprint identification.
This assignment presents no merit.
For the reasons stated above, the convictions and sentences are affirmed.
TATE, J., dissents and assigns reasons.
TATE, Justice (dissenting).
I respectfully dissent.
It was error (Assignments Nos. 10 and 12) not to permit the accused to explore, in front of the jury, the circumstances by which the victim, who at first had failed to recognize the robbers at the line-up, was induced to identify the two defendants on the basis of the two photographs of them (only) subsequently shown to her by the police.
Denying that her memory was "refreshed" by such suggestive identification techniques, the victim testified positively that she now fully recognized them. She, of course, had an independent "basis" to do so (which at first was insufficient for her to make the identification).
The circumstance that there was a possible independent basis for the identification should not immunize from jury examination whether unduly suggestive techniques had not in fact induced it. I am not prepared to hold that the identification techniques were irreparably prejudicial, in view of the victim's explanations that she had recognized the robbers at the original lineup but was afraid to identify them at that time. Nevertheless, the accused were entitled to explore fully whether, despite this after-the-fact explanation of her initial failure to identify them, the victim's present identification of them at the trial did not result from the "refreshing" of her memory by the photographs after she had first failed to identify them at the lineup.
Accordingly, I respectfully dissent.
NOTES
[1] The trial court ruled that the informant was reliable after Magnon testified the informant had given him information in the past which led to arrests and convictions and that the informant had provided him with information in criminal matters.