456 So.2d 633 (1984)
STATE of Louisiana, Appellee,
v.
Donald R. McLELAND, Appellant.
No. 16300-KA.
Court of Appeal of Louisiana, Second Circuit.
August 22, 1984.
Rehearing Denied September 21, 1984.
Writ Denied December 7, 1984.
*636 Indigent Defender Office by Richard C. Goorley and Richard E. Hiller, Shreveport, for appellant.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Baton Rouge, Paul J. Carmouche, Dist. Atty., James Stewart, John A. Broadwell, Asst. Dist. Attys., Shreveport, for appellee.
Before PRICE, JASPER E. JONES and SEXTON, JJ.
SEXTON, Judge.
Donald Ray McLeland appeals his conviction and sentence for Armed Robbery, a violation of LSA-R.S. 14:64. He argues for reversal of his conviction and sentence on the basis of three assigned errors. We affirm.
In the early morning hours of November 30, 1982, the Palomar Hotel in Shreveport, Louisiana was robbed. The night clerk, J.B. Fincher, testified that a red Volkswagen pulled up to the drive-thru window at the hotel. The person in the passenger side of the car pointed a sawed-off shotgun at Fincher and demanded money in large denominations. Mr. Fincher gave the gunman between three and four hundred dollars from the motel cash register and $152 of his own money. After receiving the money, the gunman asked for the telephone, jerked the receiver from the phone, and threw it into the street. The car then left, heading in the direction of Monkhouse Drive.
Immediately after the armed robbery call went out on the police frequency, an officer spotted a car on Monkhouse Drive which met the description given on the police radio. The officer pursued the vehicle which eventually crashed into a ditch. Four white males got out of the car. One of the boys, a juvenile, was captured at the scene. The others ran north through a muddy construction site into a wooded area. A description of the others suspected of involvement in the robbery was circulated. At about 7:30 that morning, the defendant and Eddie Dye were located coming from behind a house about one mile west of the site where the car had been abandoned. Their clothing was muddy and wet. They were subsequently placed under arrest and transferred to the police station. The fourth suspect, Barry Tripp, was located about five hours after the defendant's arrest. He was found in the vicinity of the Industrial Loop and I-20, about three to four miles west of the scene where the car was wrecked. His clothing was also muddy and wet, and he was barefooted.
Barry Tripp and Eddie Dye pled guilty to accessory after the fact to armed robbery and each received sentences of four and one-half years imprisonment. The juvenile was surrendered to the juvenile authorities and adjudicated a delinquent for his participation in the crime. Donald Ray McLeland was charged by bill of information with armed robbery and was convicted after a jury trial in which all three of his accomplices testified for the State. For his involvement in the armed robbery, McLeland was sentenced to twenty-five years at hard *637 labor, without benefit of parole, probation, or suspension of sentence.

ASSIGNMENT OF ERROR NO. 3
Defendant asserts that the trial court erred in denying his motion for mistrial based on the failure of the prosecution to reveal favorable evidence prior to trial which he claims to be discoverable under Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963).
At trial, the victim was asked by the prosecutor to describe the person who held the gun. He answered that "he was about as skinny as him, and had, you knowin other words, that is him over there." During cross-examination of this witness, it was established that approximately ten months after the crime, and one month before trial, the prosecutor showed Fincher a photograph of the defendant and a group of photographs depicting the crime scene. Other than this one instance, the victim was not shown any other photographic display, nor was he asked to view a live line-up. Upon eliciting this information, the defense attorney asked for removal of the jury, and out of their presence, made a motion for mistrial on the basis of the prosecution's non-disclosure of these facts. The defendant asserted at the trial court level and reurges on appeal that the failure of the prosecution to reveal this information precluded the opportunity to suppress an in-court identification by the victim on the basis of the impermissibly suggestive pretrial identification procedure.
Due process prohibits the conducting of an identification procedure in a manner which is unnecessarily suggestive and conducive to irreparable mistaken identity. Neil v. Biggers, 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972). In testing the constitutionality of an out-of-court identification, the suggestiveness of the identification procedure itself must first be examined. State v. Guillot, 353 So.2d 1005 (La. 1977); State v. Clark, 437 So.2d 879 (La. App. 2d Cir.1983), writ denied, 442 So.2d 460 (La.1983).
One-on-one lineup procedures are not favored. State v. Newman, 283 So.2d 756 (La.1973). However, whether or not a suggestive identification occurred depends on all the circumstances. State v. Johnson, 333 So.2d 223 (La.1976). In State v. Johnson, supra, the Supreme Court stated that the presentation to the victim of two photographs, one of each defendant, after defendants had been taken into custody, was a practice not to be lightly condoned considering the strong potential for misidentification. In U.S. v. Williams, 616 F.2d 759 (5th Cir.1980), the U.S. Fifth Circuit Court found that the display of a single photograph of the defendant rather than an array of photographs depicting different individuals was impermissibly suggestive.
Considering the totality of the circumstances surrounding the victim's out-of-court viewing of the defendant's photograph in the instant case, we have little difficulty in concluding that this identification procedure was impermissibly suggestive. We are particularly swayed by the fact that the victim was never asked to view either a live lineup or an array of photographs, but was only shown a single photograph of the defendant one month before trial, ostensibly in preparation for trial. Explaining the failure of the police to conduct a live lineup, the detective who investigated the case testified that after he talked with Mr. Fincher, he determined that a lineup was not warranted as he believed that the victim could not make an identification.
Although we specifically find that the identification procedure under the facts of this case was impermissibly suggestive, this alone does not indicate a violation of due process rights. It is the likelihood of misidentification which creates a due process violation, not merely the suggestive identification procedure. State v. Guillot, supra; Manson v. Brathwaite, 432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977). Exclusion of the in-court identification is not required, therefore, unless the impermissibly suggestive display created a substantial *638 likelihood of misidentification. Manson, supra.
Reliability of an identification is tested by examining each of five factors set forth in Neil v. Biggers, supra. These factors were reiterated in the Manson decision and have been followed by the Louisiana Supreme Court. See State v. Guillot, supra. Specifically addressing each of the Manson factors reveals:
1) The opportunity to view: The victim testified that the entire encounter with the armed robbers lasted approximately four to five minutes. Two ski masks were found inside the wrecked vehicle. Eddie Dye testified that he had a ski mask on but he did not believe anyone else in the car had on one.
2) The degree of attention: Mr. Fincher testified that he could only see one of the car's occupants, the one on the passenger side with the sawed-off shotgun. He testified that he was extremely frightened during the robbery.
3) The accuracy of the description: At trial, Mr. Fincher was unable to state whether or not the gunman had on a mask. He stated that if it was a mask it fit well, like a stocking, and was brownish not white. He was unable to give any further physical description of the gunman other than "he was about as skinny as him and had, you knowin other words, that is him over there."
4) The witness' level of certainty: Although the victim identified defendant at trial, his manner of identification indicated both uncertainty and hesitancy about the identification. When questioned about the picture showed to him by the prosecutor, Mr. Fincher stated that the photograph "looked like it had his features."
5) The time between the crime and confrontation: As previously discussed, ten months had elapsed between the crime and the pretrial identification.
Our review of these criteria as applied to this case cause us to conclude that a significant chance of misidentification by the victim existed in this case. Moreover, the pretrial identification procedure was impermissibly suggestive and the in-court identification lacked a sufficient independent basis for passage of constitutional muster. We must therefore review whether the victim's in-court identification of the defendant under these circumstances was harmless error.
In State v. Gibson, 391 So.2d 421 (La.1980), the Louisiana Supreme Court adopted the harmless error test enunciated by the U.S. Supreme Court in Chapman v. California, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967). This test requires that a reviewing court ask whether there is a reasonable possibility that the evidence complained of might have contributed to the conviction. Further, the Court must be able to declare a belief that the error was harmless beyond a reasonable doubt. State v. Gibson, supra; State v. Westfall, 446 So.2d 1292 (La.App. 2d Cir.1984).
The focus of Fincher's testimony at trial, besides establishing the sequence of events surrounding the robbery, was his identification of McLeland as one of the armed robbers. However, in addition to Fincher's identification, three other witnesses implicated defendant as a principal in the crime. Each of the co-defendants testified that defendant was in the car when the robbery occurred. Eddie Dye testified unequivocally that it was McLeland who was the gunman who robbed Fincher. Considering the other testimony establishing McLeland's participation in the crime, Fincher's testimony as to the identity of the robber was, under these circumstances, merely cumulative. Further, the jury had the benefit of hearing the facts surrounding the pre-trial viewing of defendant's photograph by the victim which facts were fully explored during the defense counsel's thorough cross-examination of Mr. Fincher. Considering the foregoing, we find the error complained of to be harmless beyond a reasonable doubt.
However, it is not so much the identification itself by the victim that defendant's counsel complains of as it is the fact of the *639 prosecutor's non-disclosure under Brady v. Maryland of the facts surrounding the photographic display. In Brady v. Maryland, the United States Supreme Court held that the State, upon request, must disclose evidence favorable to the accused where the evidence is material to either guilt or punishment irrespective of the good faith or bad faith of the prosecution. The Brady rule has been extended to encompass cases in which the non-disclosed evidence pertains to the reliability of key State witnesses. Giglio v. United States, 405 U.S. 150, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972); State v. Smith, 430 So.2d 31 (La. 1983). Brady is concerned not with the state or federal discovery statutes, but with the defendant's right to a fair trial mandated by the due process clause of the Fifth and Fourteenth Amendments.
In U.S. v. Agurs, 427 U.S. 97, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976), the Supreme Court delineated three categories of cases to which the Brady decision applies, based on the type of discovery requests made by the defense of the prosecutor, and explained the appropriate standards of materiality which give rise to the prosecutor's constitutional duty to volunteer exculpatory matter to the defense.
The instant discovery motion was general in nature.[1] When the request for material is general, it falls into the third category delineated by Agurs. In such cases, if the omitted evidence creates a reasonable doubt that did not otherwise exist, constitutional error has been committed by the failure to disclose. U.S. v. Agurs, supra; State v. Willie, 410 So.2d 1019 (La.1982).
We are convinced, in light of the overwhelming evidence adduced by the prosecution in this case to show defendant's guilt, that the failure to disclose the fact of the previous identification prior to trial does not create a reasonable doubt where none otherwise existed. When the victim's in-court identification is excised, overwhelming evidence of the defendant's guilt as a principal to the armed robbery remains. Each of the defendant's three accomplices testified at trial. Eddy Dye testified that he drove the red Volkswagen to the Palomar Hotel where the defendant, who was seated in the passenger's seat, held the sawed-off shotgun on the night attendant and demanded the money. He further testified that he and the defendant were captured together early on the morning of the robbery. He identified a sawed-off shotgun found in the wreckage and engraved "Ray" (the defendant's nickname) as belonging to the defendant. Barry Tripp testified that he did not remember the robbery as he was asleep in the back seat until awakened when hit in the leg by a gun shortly after the car left the Palomar. He was however, able to place the defendant on the passenger's side of the car, where Fincher testified the gunman was sitting. Thereafter, he remembered the chase, the crash, and running into the woods.
The juvenile testified that he traveled in the car with the others to the Palomar Hotel. He, like Barry Tripp, stated he did not remember the facts surrounding the robbery, but he did remember that Eddy Dye drove and the defendant sat in the passenger's seat. He remembered that when he alighted from the car and began to run he noticed money strewn on the *640 ground from a brown paper bag. He identified a shirt found wrapped around the license plate of the red Volkswagen as his.
The testimony of all of these principals correlates with the other evidence in the caseto include the circumstances of the robbery, the flight and the apprehension in such a fashion as to make it apparent that even when the offending evidence is excised that a reasonable doubt as to the guilt of the defendant is not created.
Thus, in summary, we find that the prosecutor's pre-trial conduct was improper; but the non-disclosure of the facts surrounding the photographic showing prior to trial, when weighed against the other substantial evidence of defendant's guilt, is not fatal to this conviction. Given the overwhelming evidence of defendant's identity as a participant in this crime, i.e., his co-defendant's testimony, the presence of his shotgun in the wrecked car, and his apprehension with his co-defendant near the crash site, we cannot find that the non-disclosure impaired defendant's ability to properly assess the strength of the State's case against him, nor did it impair his ability to prepare a defense. Additionally, the jury was apprised of all the circumstances which surrounded the victim's pre-trial viewing of the defendant's photograph. Moreover, we are unconvinced that mistrial is the only appropriate remedy when the defense is surprised by undisclosed evidence. Neither a continuance, nor a recess, nor an admonition was requested by defense counsel. See State v. Arnaud, 412 So.2d 1013 (La.1982). Since defendant was not prejudiced by the non-disclosure of this evidence, this assignment of error lacks merit.

ASSIGNMENT OF ERROR NO. 4
By this assignment of error, defendant complains that the trial judge should have granted a mistrial after Barry Tripp, when asked how long he had known the defendant, testified that he met defendant "in a training institute." Defendant claims that this comment was an impermissible reference to his previous incarceration as a juvenile offender. Following the denial of the motion, the judge admonished the witness to answer the questions responsively. Defense counsel made no request for a jury admonition.
When a remark or comment is made by a witness which is irrelevant or immaterial and of such a nature that it might create prejudice against the defendant in the mind of the jury, upon request of the defendant, the Court shall promptly admonish the jury to disregard the remark or comment made during the trial. In such a case, on motion of the defendant, the Court may grant a mistrial if it is satisfied that an admonition is not sufficient to assure the defendant a fair trial. LSA-C. Cr.P. Art. 771. A mistrial is a drastic remedy and should be declared only when unnecessary prejudice results to the accused; the determination of whether prejudice has resulted lies within the sound discretion of the trial judge. State v. Smith, supra.
In State v. Adams, 394 So.2d 1204 (La. 1981), the Supreme Court upheld the trial court's denial of a mistrial based upon a witness' statements that he had lived with the victim up until the defendant got out of "rehab." Noting the ambiguous nature of the response, the Court concluded that there was no substantiation of defendant's claim that the term "rehab" referred to or was understood by the jury to refer to prior criminal conduct.
As in Adams, the words "training institute" are ambiguous and can be interpreted to refer to an educational or vocational institution, and do not necessarily refer to a juvenile detention center. Further, unsolicited and unresponsive testimony is not chargeable against the State to provide grounds for reversal of a conviction. State v. Michel, 422 So.2d 1115 (La. 1982). The trial judge did not abuse his discretion in this instance. This assignment of error is meritless.

ASSIGNMENT OF ERROR NO. 8
Defendant claims that his sentence to twenty-five years at hard labor for the *641 armed robbery was excessive. Defendant is specifically concerned with the disparity in his sentence as compared to his co-defendants.
A sentence is constitutionally excessive in violation of Louisiana Constitution of 1974, Art. 1, § 20 if the sentence is grossly out of proportion to the severity of the offense, or nothing more than a needless and purposeless imposition of pain and suffering. State v. Bonanno, 384 So.2d 355 (La.1980); State v. Cunningham, 431 So.2d 854 (La.App. 2d Cir.1983).
It is well-settled that the sentencing judge is given wide discretion in imposing a sentence within the statutory limits, and such a sentence should not be set aside as excessive in the absence of manifest abuse of discretion by the sentencing judge. State v. Square, 433 So.2d 104 (La.1983); State v. Brooks, 431 So.2d 865 (La.App. 2d Cir.1983); State v. Hammonds, 434 So.2d 452 (La.App. 2d Cir. 1983), writ denied 439 So.2d 1074 (La.1983).
The sentencing guidelines of LSA-C.Cr.P. Art. 894.1 provide the criteria to consider in determining whether a sentence is excessive. State v. Sepulvado, 367 So.2d 762 (La.1979); State v. Tully, 430 So.2d 124 (La.App. 2d Cir.1983). While the trial judge need not articulate every aggravating and mitigating circumstance outlined in Art. 894.1, the record must reflect that he adequately considered these guidelines in particularizing the sentence to the defendant. State v. Hammonds, supra; State v. Cunningham, 431 So.2d 854 (La. App. 2d Cir.1983); State v. Smith, 433 So.2d 688 (La.1983).
When imposing sentence in the instant case, the trial judge took into consideration the fact that the defendant was the ring leader of the group who perpetrated this crime. The trial judge also noted that the evidence tended to show that the defendant was the man who held the shotgun on the victim and was the man who obtained the money. The trial judge further noted that the defendant had prior convictions for burglary and possession of marijuana. The trial judge expressly found that there was an undue risk that if a suspended sentence was imposed the defendant would commit another crime. Finally, the trial judge stated that in light of the seriousness of the crime, a sentence of 25 years at hard labor without benefit of parole, probation or suspension of sentence was warranted. According to the judge, a harsher sentence would have been imposed but for the hope of defendant's becoming a useful member of society.
The defendant contends that his sentence is nothing more than purposeless imposition of pain and suffering because it makes no measurable contribution to acceptable goals of punishment because his accomplices received relatively light sentences of four and one-half years each. The law is well-settled that the sentencing judge is not required to treat co-defendants equally. State v. Rogers, 405 So.2d 829 (La.1981); State v. Kline, 427 So.2d 1298 (La.App. 2d Cir.1983). The disparity of sentences between co-defendants is only a factor to be considered along with all other appropriate considerations. State v. Quimby, 419 So.2d 951 (La.1982). The record in this case shows that there is ample justification for the disparity in sentences between the principals to this crime. As mentioned before, the evidence showed that the defendant was the ring leader of the group when the crime was perpetrated. The other co-defendants also did not participate equally in the crime. The record shows that one co-defendant was a juvenile, another was unconscious while the crime was perpetrated, and the third co-defendant merely drove the getaway vehicle at the direction of the defendant. Finally, the record reflects that the defendant had a substantially more significant criminal record than his co-defendants. This assignment of error lacks merit.

ASSIGNMENTS NO. 1, 2, 5, 6, 7
These assignments of error were not briefed nor argued. They are considered abandoned. State v. Wright, 445 So.2d 1198 (La.1984).
*642 For the above stated reasons the conviction and sentence of Donald Ray McLeland are affirmed.
AFFIRMED.
NOTES
[1] Defendant's discovery motion reads in part:

"5.
Defendant requests the Court to order the District Attorney to inform the defendant of the existence of any books, papers, documents, photographs, tangible objects, buildings, places, or copies or portions thereof which are within the possession, custody, or control of the State, and which:
a. Are favorable to the defendant and which are material and relevant to the issue of guilt or punishment; or
b. Are intended for use by the State as evidence at the trial; or
c. Were obtained from or belong to the defendant; and to permit or authorize the defendant to inspect, copy, examine, test scientifically, photograph, or otherwise reproduce any of the above items."
A similar request was held to be a general request for Brady material in State v. Johnson, 426 So.2d 95 (La.1983).