403 So.2d 719 (1981)
STATE ex rel. William ROSS
v.
Frank C. BLACKBURN, Warden, Louisiana State Penitentiary.
No. 81-KH-0411.
Supreme Court of Louisiana.
September 8, 1981.
*720 C. Frank Holthaus, Baton Rouge, for defendant-relator.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Paul Carmouche, Dist. Atty., Dale G. Cox, Asst. Dist. Atty., for plaintiff-respondent.
LABORDE, Justice ad hoc.[*]
Defendant William Ross was convicted of second degree murder in Caddo Parish in February of 1974 and sentenced to life imprisonment without benefit of parole, probation or suspension of sentence for 20 years. Following an appeal to this Court wherein the only argument urged was the unconstitutionality of the second degree murder statute, defendant's conviction and sentence were affirmed. State v. Ross, 304 So.2d 354 (La.1974). In September of 1975, a pro se application for writ of habeas corpus alleging ineffective assistance of counsel was filed in the District Court and summarily denied. In January of 1976, this Court granted defendant's pro se writ application and ordered an evidentiary hearing held on the ineffective assistance of counsel claim. Following that hearing, the district court, in March of 1979, again denied the writ and this court denied defendant relief from that judgment. In August of 1980, defendant filed a pro se application in district court challenging his conviction on dual grounds of an alleged "unconstitutional jury instruction and insufficiency of evidence." That application was denied by the district court and defendant now appears before this Court on a grant of supervisory writs.

FACTS
On December 5, 1973, defendant Ross, in a quick motion, pulled a gun from his pocket and fired it. The bullet struck and killed Katrina Yolanda Sibley, the three year old child of defendant's girlfriend, Willie Faye Sibley. The shooting took place in Ms. Sibley's apartment and occurred during an argument between Ross and Ms. Sibley. The defendant alleges that the gun accidentally discharged and that he had no intent to harm Ms. Sibley or her daughter. He asserts that he pulled the gun out simply to scare Ms. Sibley, as he had successfully done on two prior occasions. As set forth above, the jury found defendant Ross guilty of second degree murder. Defendant now urges the following arguments as grounds for reversal of his conviction and sentence.

ASSIGNMENT OF ERROR NO. 1
By this assignment the defendant urges that the trial court erred in instructing the jury that "a man is presumed to intend the natural and probable consequences of his act," in violation of the 1979 ruling of Sandstrom v. Montana, 442 U.S. 510, 99 S.Ct. 2450, 61 L.Ed.2d 39 (1979), and State v. Heads, 385 So.2d 230 (La.1980).
The trial judge gave the following instruction on intent to the jury:
"Criminal intent has been referred to in this case. The law of Louisiana provides in Article 10 of the Criminal Code criminal intent may be specific or general. Specific criminal intent: This is a state of mind which exists when the circumstances indicate that the offender actively desired the prescribed criminal consequences to follow his act or failure to act. General criminal intent is present whenever there is specific intent and also when the circumstances indicate that the offender in the ordinary course of human *721 experience must have adverted to the prescribed criminal consequences as reasonably certain to result from his act or failure to act.
The definitions of some crimes require a specific criminal intent, while in others no intent is required. Some crimes consist merely of a criminal negligence that produces criminal consequences. However, in the absence of qualifying provisions the term[s] `intent' and `intentional' have reference to general criminal intent. That concludes the definition of criminal intent as contained in the criminal code.
Although intent is a question of fact it need not be proven as a fact, and may be inferred from the circumstances of the transaction.
Specific criminal intent is that state of mind which exists when the circumstances indicate that the offender actively desired and actually intended to accomplish the criminal consequences constituting the crime charged. This intent need not be proven by direct evidence. It is not possible to look into a person's mind and discover his intentions. It may be inferred from the circumstances, such as the intentional use of a deadly weapon. A man is presumed to intend the natural and probable consequences of his action. The intent need not have existed for any material length of time. It is sufficient if it was in the mind of the accused at the time of the commission of the act. If a person intends to kill one person and unintentionally kills another, his guilt or innocence is to be determined as though the fatal act had caused the death of the person against whom the act was directed. You may consider all of the evidence in the case which you believe bears on the question of the intent of the defendant in order to reach a conclusion as to his criminal intention."
The defense urges that this instruction violated the recent case of Sandstrom v. Montana, 442 U.S. 510, 99 S.Ct. 2450, 61 L.Ed.2d 39 (1979) and State v. Heads, 385 So.2d 230 (La.1980). In Sandstrom, supra, the United States Supreme Court found an instruction that "the law presumes that a person intends the ordinary consequences of his voluntary acts" suggestive of serious constitutional problems since such a presumption could have the effect in a deliberate homicide prosecution of shifting the burden to the defendant to show that he lacked the requisite mental state of the crime, or create a conclusive presumption of intent against the defendant. A jury's inference that the presumption was mandatory and irrebuttable would alleviate the state's burden of proving beyond a reasonable doubt every element of the crime charged, in violation of the mandate of In Re Winship, 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970).
This Court applied the rationale of Sandstrom in State v. Heads, supra a first degree murder case where the same instruction was given, i. e., "a man is presumed to intend the natural and probable consequences of his acts." This Court held:
"As in Sandstrom, the jury could have interpreted the instruction as either shifting the burden of proving intent to defendant or creating a conclusive presumption of intent against defendant. Since intent, an essential element of the crime charged, was the main issue in the case and was also the subject of the erroneous instruction, we are unable to say that the error was harmless beyond a reasonable doubt. Hence, we must remand the case to the district court for a new trial consistent with the views expressed by the United States Supreme Court in Sandstrom v. Montana, supra."
In light of defendant's testimony that he intended to use the weapon but only meant to scare Ms. Sibley and had no intent to harm her or her daughter, the question of intent had become the critical issue at trial. Under the Sandstrom rationale, the instruction given in the instant case was prejudicial to the defendant. A serious problem arises, however, in that unlike either Sandstrom or Heads, defense counsel here made no objection to the instructions at trial. This Court has consistently held that erroneous jury instructions are not errors *722 patent and absent a contemporaneous objection, a defendant may not on appeal complain of the judge's charge to the jury. LSA-C.Cr.P. art. 841; State v. Craddock, 307 So.2d 342 (La.1975); State v. Mitchell, 319 So.2d 357 (La.1975); State v. Stramiello, 392 So.2d 425 (La.1980). In the recent case of State v. Harris, 383 So.2d 1 (La. 1980), a Sandstrom challenge was made where the jury was instructed that "a sane person is presumed to intend the natural and probable consequences of his acts." This Court denied relief finding that no contemporaneous objection was made below. The Court also stated that the jury charge made it clear that the state had the burden of proving specific intent to kill beyond a reasonable doubt. Harris, supra, 383 So.2d at 11. Cf., State v. Williamson, 389 So.2d 1328 (La.1980); Tyler v. Phelps, 622 F.2d 172 (5th Cir. 1980).
Failure to object below precludes the defendant from raising this argument in a collateral proceeding as well as on appeal. Hence, this assignment lacks merit.

ASSIGNMENT OF ERROR NO. 2
By this assignment, defendant contends that there is insufficient evidence to sustain his conviction for second degree murder under Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). Under Jackson, a defendant's challenge against sufficiency of evidence is judged by determining whether a rational jury, after construing the evidence in the light most favorable to the prosecution, could find proof of guilt beyond a reasonable doubt.
Applying this test to the facts of this case, we cannot say Ross is entitled to relief. Viewing the evidence in the light most favorable to the prosecution, the record evidences that William Ross, although married, had been seeing Willie Fay Sibley for approximately one and one-half years. During that time, Ross frequently stayed overnight at Ms. Sibley's apartment. On the evening preceding the morning of the shooting, Ross and Ms. Sibley engaged in an argument. According to Ms. Sibley, Ross wanted her to have a child for him and became upset when she refused. She claimed he told her he disliked the idea that none of her three children was his and that everyday he walked around her house looking at evidence of some other man's children. Ms. Sibley also testified that Ross told her he could understand her having the first two children because she was younger, but he could not understand why she had Katrina, the victim, because by that time she [Ms. Sibley] was eighteen years old and had sense enough to know what she was doing.
According to the evidence, the argument between Ross and Ms. Sibley subsided and both went to bed with neither one speaking to the other. Ross got up at 4:00 the next morning, returned home to his wife, and left from there about 6:45 a.m. to go to work. That same morning, Ross called Ms. Sibley from work in order to apologize. She was still upset and informed him that she no longer wanted to see him. Ross asked to be excused from work stating that his son was sick and he needed to take him to the hospital. Instead, Ross went directly to Ms. Sibley's apartment, parking his car in an alley down the street instead of near the apartment where he usually parked. Ross went inside and he and Ms. Sibley continued their argument as Ross began gathering his things together in order to take them home. It was while they were in Ms. Sibley's 9' X 15' bedroom that Ross pulled out a double action .32 caliber pistol to, as he claims, scare Ms. Sibley with it. The gun fired and its bullet hit and killed Katrina who was approximately five feet away sitting on a bed near her mother. The police arrived at the scene shortly and Ross told them that he was removing the gun from a chest of drawers when it accidentally discharged and struck the child. Ross later revised his statement to the present version that he pulled his gun out to scare Ms. Sibley and it accidentally fired, killing the child.
We hold that based upon this evidence, a rational fact finder could, after construing it in a light most favorable to the prosecution, conclude that Ross, beyond a reasonable *723 doubt, had the intent to kill or to do great bodily harm. Since Ross' claim of insufficiency of evidence goes only to the question of his intent, his second argument lacks merit.

DECREE
For the foregoing reasons, the conviction and sentence of defendant is affirmed.
NOTES
[*] Judges J. Burton Foret, Jimmy M. Stoker and P.J. Laborde, Jr. of the Court of Appeal, Third Circuit, participated in this decision as associate justices ad hoc, joined by Chief Justice Dixon and associate justices Marcus, Blanche and Watson.