JiDECUIR, Judge.
This case arises subsequent to a grand jury indictment for attempted aggravated kidnapping, aggravated kidnapping, attempted aggravated rape, and molestation of a juvenile. Defendant filed several motions including a motion to sever and a motion to exclude Prieur[1] evidence of prior bad acts. The trial court severed counts two and three, advising that it would allow the joinder of counts one and two or one and three. Trial counsel objected to the joinder of any counts. The State severed count four and elected to proceed on counts one and two. Prior to trial, the State agreed not to use other crimes evidence. However, a motion for mistrial was granted and a new trial date was set for June 17,1996. The State then decided to use other crimes evidence and filed its notice, resulting in the hearing which constitutes part of the error assigned by defendant.
|2Lagrange waived his right to trial by jury. The Prieur hearing resulted in the admission of alleged evidence of prior bad acts to prove identity, intent, and modus operandi. Additionally, the judge expressed belief that the evidence would be admissible in any event under La.Code Evid. art. 406 based on habit or routine.
Defendant was found guilty of attempted second degree kidnapping and of aggravated kidnapping. He was sentenced to serve twenty (20) years at hard labor without benefit of probation, parole, or suspension of sentence for attempted second degree kidnapping; he was sentenced to life imprisonment without probation, parole, or suspension of sentence for aggravated kidnapping. The sentences were to run concurrently.
Subsequent to sentencing, defendant filed a timely motion to reconsider his sentence, which motion was denied. Defendant appeals his convictions for the reasons assigned as error including the alleged excessiveness of his sentence.

FACTS:

Defendant was charged subsequent to photo-identifications by several child witnesses and victims and one adult. Jonathan, one of the child victims, told police that on April 3, 1995, he was approached by Lagrange, who was in his automobile. According to Jonathan, defendant asked if Jonathan needed a ride to which he responded in the negative. Jonathan then stated that defendant acted as if he dropped something to the ground and grabbed him. During the ensuing struggle, Jonathan claims to have bitten defendant resulting in his release. The victim then ran home.
At home, Jonathan did not tell his grandmother about the incident because he was concerned about her arthritic condition and did not want her going out “in the rain” to look for the defendant. However, Jonathan did tell his teacher about the incident the next day. He subsequently told his grandmother the entire story, and she called the Sheriffs Department.
1 ¡¡Deputy Grady Guillory was assigned to investigate Jonathan’s allegations. According to Deputy Guillory, Jonathan described defendant as “an Indian.” Guillory testified that, per the description given by Jonathan, he recognized the perpetrator to be Nelson Lagrange. Accordingly, Deputy Guillory supplied the name of the suspect to Deputy Andrew Hursey. Deputy Hursey presented Jonathan with a photographic lineup, including a picture of Lagrange, and Jonathan immediately identified defendant. On the other hand, Jonathan stated that he had seen the man who grabbed him on Crime Stoppers and had heard the name Nelson McMillan on that program. Neither a Nelson Lagrange nor a “Nelson McMillan” have ever been on Crime Stoppers.
Brandon, another juvenile victim, testified that on April 19, 1995, defendant grabbed him from behind, threw him in a truck, and *1009 took him to a spot where he had the victim remove his clothes. After defendant removed his own clothes, he touched Brandon’s buttocks with his hands and penis. Brandon began to scream out to an aunt who lived nearby, whereupon defendant put him in the truck and drove him back to his school. Defendant then threatened to kill Brandon if he disclosed the incident to anyone. Arriving late to school, Brandon lied to school personnel regarding his tardiness; however, the school personnel suspected something was wrong and called the Lake Charles Police Department. Detective Brian Brewton investigated, testifying that it was difficult to elicit information from this victim because he was afraid for his life. Thereafter, Deputy Hursey contacted a Sergeant Brewton and informed him of the Sheriffs Office investigation disclosing defendant’s name.
At a photographic lineup conducted by Sergeant Brewton, Brandon was shown photographs of several persons, including Lagrange. Conspicuously, Brandon compared and contrasted similarities between his abductor and the photographs, carefully avoiding defendant’s picture. When asked directly whether the man who 14abducted him was in the lineup, Brandon pointed to each photograph other than defendant’s and stated “this is not the man.” Eventually, with familial assurances that he would not be harmed, Brandon identified defendant. Brandon also stated that defendant and his mother had disagreements in the past. Several other witnesses testified as to prior acts of Lagrange, including hearsay about Lagrange and his past.

ERRORS PATENT:

After careful review of the record, we find no errors patent. La.Code Crim.P. art. 920.

ASSIGNMENT OF ERROR NO. 1:

By his first assignment, defendant contends that the use of suggestive identification procedures impermissibly prejudiced him and, therefore, the evidence used to convict him was insufficient under the Jackson[2] standard.
In the instant matter, the identity of the defendant is at issue; therefore, the question is whether the evidence obtained identifying defendant was trustworthy or whether it was insufficient because of alleged suggestiveness. Before addressing suggestiveness problems, however, this case presents a factual scenario requiring review of the elements required to convict for aggravated kidnapping. According to State v. Acevedo, 93-1474 (La.App. 4 Cir. 2/25/94), 633 So.2d 828, writ denied, 94-0602 (La.3/31/94), 635 So.2d 1103, in order to convict defendant of the crime of aggravated kidnapping, it must be proved that:
The Court analyzed the aggravated kidnapping statute, found that the critical distinction between the crime of aggravated kidnapping and the crime of simple kidnapping is the kidnapper’s intent to extort, and determined that the four elements constituting aggravated kidnapping are:
1. the forcible seizing and;
|g2. the carrying of any person from one place to another (the asportation element);
'3. with the intent to force the victim, or some other person, to give up anything of apparent present or prospective value (the extortion element);
4. in order to secure the release of that person.
Id. at 831-832.
Thus, the State must prove that defendant expected to gain some advantage from his victim. Defendant developed considerable testimony that would indicate that the victim’s release was in no way contingent upon doing anything that would inure to Lagrange’s benefit and, accordingly, aggravated kidnapping is not applicable. The following was adduced at trial:
Q Did he tell you, I’m not gonna let you out of this ear if you tell somebody, or did he just tell you that if you told someone, he’s gonna come back and kill you?
A Yes, sir.
******
*1010 Q Did he ever tell you that you had to do anything before he would let you go?
A No, sir.
Notwithstanding this testimony, jurisprudence holds that kidnapping someone with the condition that sexual favors are provided is sufficient to be within the “giving up” of something of prospective value requirement of aggravated kidnapping. See State v. Arnold, 548 So.2d 920 (La.1989). Consequently, when the factfinder found the testimony of the victim credible as to the sexual abuse, the Arnold standard allows the inference that defendant’s actions manifested an intent to force the victim to comply with those advances in hopes of getting released.
Lagrange was also convicted of attempted second degree kidnapping. The elements of that crime are proof that defendant had the specific intent to kidnap and | (¡commit an illegal sexual act upon the victim. La.R.S. 14:27 and 14:44.1. To prove its case, the State used other crimes evidence adduced at a Prieur hearing and the testimony of two victims at trial. In other words, the State used the evidence of the aggravated kidnapping in part to prove the attempted second degree kidnapping.[3] Thus, the aggravated kidnapping was, most importantly, evidence of intent.
The State contended that defendant attempted to abduct Jonathan and commit some lascivious act. Originally, the State charged defendant with attempted aggravated kidnapping, but the judge convicted on the lesser offense of attempted second degree kidnapping. To do so, the Prieur evidence was necessary since the abduction of Jonathan occurred prior to the abduction of Brandon.
Turning back to the testimony of the victims, Brandon and Jonathan identified Lagrange at pre-trial photographic lineups and during trial. Thus, the in-court identifications would normally bolster the out-of-court identifications. Nonetheless, suggestive identification procedures during the pre-trial investigation might have been so unduly suggestive as to “taint” the later in-eourt identifications.
In State v. Williams, 375 So.2d 364 (La.1979), the supreme court stated:
Even if suggestive identification procedures are proven by the defense, it is the likelihood of misidentification, and not the mere existence of suggestiveness, which violates due process. Manson v. Brathwaite, 432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977); State ex rel. Fields v. Maggio, 368 So.2d 1016 (La.1979). In State v. Guillot, 353 So.2d 1005 (La.1977), this court indicated that it would employ the five factors articulated in Manson v. Brathwaite, supra, to balance the corrupting effect of a suggestive identification. We must therefore evaluate: the witness’ opportunity to view the crime; the degree of attention paid by the witness; the accuracy of any prior description; the 17level of certainty displayed at the confrontation; and the amount of time between the crime and the confrontation.
Id. at 369.
Further, general precepts governing suggestiveness instruct:
To prove a violation of due process, a defendant seeking to suppress an identification must first show that the identification procedure was unnecessarily suggestive and second, that there was a substantial likelihood of misidentification. Neil v. Biggers, 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972); State v. Lowenfield, 495 So.2d 1245 (La.1985). In general, one on one photographic identifications (“show-ups”) are not favored; nevertheless, whether an impermissibly suggestive identification occurs depends on all of the circumstances. State v. Johnson, 333 So.2d 223 (La.1976); State v. Lewis, 478 So.2d 665 (La.App. 2d Cir.1985). Admitting evidence of a suggestive identification procedure does not violate due process if the identification is rehable. Manson v. Brathwaite, 432 *1011 U.S. 98, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977); State v. Guillot, 353 So.2d 1005 (La.1977); State v. Mims, 501 So.2d 962 (La.App.2d Cir.1987).
A tainted pretrial identification does not render a subsequent in-eourt identification inadmissible if the in-eourt identification is reliable and has an independent basis. State v. Winn, 412 So.2d 1337 (La.1982).
Any defects in procedure which do not offend the defendant’s due process rights go to the weight, rather than the substance, of the evidence submitted to the jury. Manson v. Brathwaite, supra.
State v. James, 592 So.2d 867 at 870 (La.App. 2 Cir.1991).
The factors delineated in Williams have become known as the Biggers factors, and these criteria are useful in determining whether the dangers associated with suggestiveness render an identification too suspect to use. As to the first two Biggers factors, Brandon and Jonathan both saw the alleged perpetrator up close, in broad daylight, and for an extended period of time. Their attentions were definitely focused on the man who abducted them. Each boy was manhandled by Lagrange and were with him for a sufficient time to allow the inference of sufficient exposure for identification purposes.
At first blush, the third Biggers factor, ie., accuracy of the witnesses’ prior description, is somewhat problematic. In the instant matter, this factor is related to the | ^fourth factor and is suspect only because it is difficult to ascertain the impact of defendant’s threats to the young victims. In any event, both Jonathan and Brandon were certain of their identifications once it was clear to them that their well-being was not in jeopardy and those they cared for would not be harmed.
The final Biggers factor is the time between the offense and the confrontation. The initial out-of-court identification was made within a day of the offense for each of these victims. The in-eourt identifications were made slightly in excess of one year for the victims.
Addressing the credibility findings of the factfinder, it is obvious the judge found the testimony of Brandon and Jonathan supporting the identification of defendant credible and reliable. In State ex rel. Graffagnino v. King, 436 So.2d 559, 563 (La.1983), the court stated: “It is the role of the fact-finder to weigh the respective credibilities of the witnesses, and this court will not second-guess the credibility determinations of the trier of fact beyond our sufficiency evaluations under the Jackson standard of review.” See also State v. Hongo, 625 So.2d 610 (La.App. 3 Cir.1993), writ denied, 93-2774 (La.1/13/94); 631 So.2d 1163; State v. Henry, 95-428 (La.App. 3 Cir. 10/4/95); 663 So.2d 309.
Any internal contradictions on the part of Brandon were explained by his fear of defendant. These internal contradictions were also unequivocally cleared up by Brandon once his fears were allayed. Jonathan’s statement that he saw defendant on Crime Stoppers (which is not possible) was made clear to the judge and, the judge, as the factfinder and weigher of credibility, obviously found the identification alone believable.
Moreover, Deputy Hursey clearly stated that he did not “indicate” who the suspect was in the photographic lineup procedure to Jonathan; that he gave “no hints _[gor any clues as to who [sic] you wanted to pick out”; and that Jonathan was in no way “foree[d], threatened], or coeree[d][by] him to pick a photograph out of that photographic lineup.” Deputy Hursey conducted his identification procedure with several other photographs — as distinguished from single photo-identification techniques that have been held more often to be unnecessarily suggestive.
In addition, defendant notes impeachment evidence concerning discrepancies relative to descriptions of his vehicle. However, defendant’s own witness on cross-examination, a Mr. Winters, admitted that Lagrange may have been driving different vehicles at the time of commission of the offenses since his truck was broken. The court obviously found the victims’ testimony more credible than defendant’s witness.
Irrespective of the contradictory evidence (which was later explained to the apparent satisfaction of the court), two victims identified defendant successfully. State v. Taylor, *1012 95-561 (La.App. 3 Cir. 12/6/95); 665 So.2d 149, held that the testimony of the victim alone may be sufficient to establish the elements of the crime.
For these reasons, this assignment is without merit.

ASSIGNMENT OF ERROR NO. 2:

In this assignment, defendant argues that the trial court erred when it denied his motion to sever and, relatedly, this problem was magnified by the subsequent admission of other bad acts and crimes which unduly prejudiced defendant.
At the Prieur hearing, the State introduced the testimony of several witnesses, in addition to the victims, who corroborated the modus operandi or, if insufficient to demonstrate modus operandi, the habit of defendant to follow closely behind children in his car and give chase if necessary. Furthermore, an adult witness recalled defendant from her own childhood and the same peculiar habits.
At the outset (and as noted by defendant), evidence of other crimes distinctive from the one alleged which might not be admissible under Prieur in a separate trial on | ipa charge may nonetheless be joinable if the joinder is otherwise permissible. State v. Davis, 92-1623 (La.5/23/94); 637 So.2d 1012, cert. denied, 513 U.S. 975, 115 S.Ct. 450, 130 L.Ed.2d 359 (1994). We find that no error occurred when the trial court refused to sever as it was harmless for the cases to be tried together insofar as prejudice is concerned since the evidence tending to prove the aggravated kidnapping could have been used as other crimes evidence in the trial on attempted aggravated kidnapping (and vice versa). Further, in accordance with the general rule concerning whether severance is proper, the finder of fact, in this case, the judge, could ascertain and understand the complexities of the case and apply the law intelligently. See State v. Harris, 383 So.2d 1 (La.1980); La. Code Crim.P. art. 495.1. Moreover, the attempted second degree kidnapping could be used, in a subsequent trial on aggravated kidnapping, to prove an element of aggravated kidnapping.[4] Davis, Id. at 1019.
In any event, in the case sub judice, it would be harmless error since other evidence, excluding the other crimes evidence, was sufficient to prove the offense of aggravated kidnapping and attempted second degree kidnapping. Cf. State v. Crawford, 95-1352 (La.App. 3 Cir. 4/3/96); 672 So.2d 197, writ denied, 96-1126 (La.10/4/96); 679 So.2d 1379.
Defendant further contends the trial court erred in admitting evidence of various other crimes which magnified its error in faffing to sever. Due to the substantial risk of grave prejudice to a defendant, evidence of other acts of misconduct is generally inadmissible. However, statutory and jurisprudential exceptions to this rule do exist. State v. Jackson, 625 So.2d 146 (La.1993); Prieur, 277 So.2d 126.
In Jackson, 625 So.2d 146, the Louisiana Supreme Court summarized the requirements for the admission of “other crimes” evidence. The state must: (1) Incomply with the notice and jury instruction requirements set out in Prieur, 277 So.2d 126; (2) prove that the other bad act occurred and was committed by the defendant; (3) show that the evidence falls within one of the La.Code Evid. art. 404(B)(1) exceptions; and (4) show that the probative value of the evidence outweighs its potential prejudicial value.
The defendant further asserts the evidence was not presented for a legitimate purpose but only to display him as a person with criminal propensity, and the prejudicial effect of the evidence outweighed its probative value. However, while Crawford, 672 So.2d 197, recognized the jurisprudence holding that other crimes evidence demonstrating modus operandi or system “must be distinctively similar,” the case went on to reason that:
While the details of the various attacks were not so similar so as to produce a distinct modus operandi, we find that the trial judge properly admitted the testimo *1013 nies because ... they all show a pattern and intent or “lustful disposition” on defendant’s part to force women, with either a knife or through strangulation and brute force, to engage in nonconsensual sex.
Id. at 210.
In the instant matter, this court need only substitute children, particularly young African-American boys, for women; the dangerous weapon is substituted with the extreme physical inferiority of the child. Thus, the trial court allowed the evidence for the purpose of proving system, intent, and identity per the notice of the State. The court further stated:
This Court finds that the evidence that the District Attorney is attempting to lay before the trier of fact is relevant, and if it is prejudicial, its probative value certainly outweighs any prejudicial effect. In fact, I find it more under Article 406 of the Evidence Code as to habit, routine and practice than anything else. The evidence certainly conforms to the fact, and Mr. Ortego says that, that this individual, the defendant in this case, had a habit, a routine, of hanging around elementary schools, hanging around playgrounds, hanging around the neighborhood. He had a routine of following young children, and these children for the most part were African American males between 8 and 12 years old. This happened on | ^numerous occasions and it’s certainly relevant, if not as a Pri-eur situation, certainly under 406, but I rule that it’s proper under 406 and State versus Prieur. Defense Counsel’s objection to Counsel’s introduction of this evidence is hereby denied; however, Counsel is free to take writs on this matter, however this Court will not issue a stay order since the trial is, I think, Monday, and you’re also free to reurge your motion before the trial judge in this matter, who will most probably be Judge McLeod.
For the reasons above, this assignment is without merit.

ASSIGNMENT OF ERROR NO. 3:

In State v. Everett, 530 So.2d 615 (La.App. 3 Cir.1988), writ denied, 536 So.2d 1233 (La.1989), this court formulated the following analysis when determining the exces-siveness of a sentence:
Although a sentence imposed by a trial judge may fall within the statutory limitations, it may still be unconstitutionally excessive. A sentence- is deemed excéssive if it: (1) makes no measurable contribution to acceptable penal goals and is, therefore, nothing more than a purposeless and needless imposition of pain and suffering; or (2) is grossly out of proportion to the severity of the crime.
Id. at 624.
To constitute an excessive sentence, this court must find the penalty is so grossly disproportionate to the severity of the crime as to shock our sense of justice or the sentence makes no measurable contribution to acceptable penal' goals and, therefore, is nothing more than needless imposition of pain and suffering. Id.; State v. Campbell, 404 So.2d 1205 (La.1981). The trial judge is given wide discretion in imposing a sentence, and a sentence imposed within statutory limits will not be deemed excessive in the absence of manifest abuse of discretion. State v. Howard, 414 So.2d 1210 (La.1982).
In the case sub judice, defendant, a first-time.felony offender, was sentenced to life imprisonment without benefit of probation, parole, or suspension of sentence on the aggravated kidnapping conviction and twenty (20) years imprisonment without | ^probation, parole, or suspension of sentence on the attempted second-degree kidnapping conviction. The sentences were ordered to run concurrently. The sentencing range for aggravated kidnapping is life imprisonment without probation, parole, or suspension of sentence. The penalty range for attempted second degree kidnapping is twenty years imprisonment at hard labor. Thus, defendant received the maximum penalty for the attempt conviction. State v. Edwards, 532 So.2d 304 (La.App. 3 Cir.1988), states that maximum sentences are reserved for the worst offenders. In the case sub judice, the sentencing judge stated:
With respect to the sentencing guidelines provided in Code of Criminal Procedure 894.1, the Court states for the record the following. Of course, the statute for ag *1014 gravated kidnapping commands a particular sentence of imprisonment, but the Court wants to know or rather wants the record to show that it appears to the Court that Article 894.1A, 2 and 3 both apply which would indicate the suitability of imprisonment. Number 2 is a factor which reads: The defendant is in need of correctional treatment or a custodial environment that can be provided most effectively by his commitment to an institution. Number 3: A lesser sentence will deprecate the seriousness of the defendant’s crime. End quote. With respect to the same Articles, subparagraph “B,” the Court thinks that the following sections particularly apply. Number 2: The offender knew or should have known that the victim of the offense was particularly vulnerable or incapable of resistance due to extreme youth. The Court also thinks 3 has been — is appropriate. The offender offered or has been offered or has given or received anything of value for the commission of the offense. The offender proposed to one of the victims that the defendant— excuse me — that the victim should not advise anybody else of the crime that the defendant had perpetrated on the victim. Number 6: The offender used threats of or actual violence in the commission of the offense. Both threats and violence were committed according to the testimony of the witnesses in Court.
Nelson LaGrange, on Count One, Attempted Second Degree Kidnapping, the Court sentences you to serve 20 years at hard labor without benefit of parole, probation or suspension of sentence.
Nelson LaGrange, on Count Two, Aggravated Kidnapping, the Court sentences you to life imprisonment at hard labor without benefit of parole, probation or suspension of sentence.
State v. Smith, 93-0402 (La.7/5/94); 639 So.2d 237, clearly does not require the trial judge to state every mitigating or aggravating circumstance applicable; [^rather, the judge must consider the guidelines and state his reasons for the sentence imposed. The sentencing colloquy demonstrates that defendant was given an opportunity to present whatever reasons in mitigation he desired, and that the judge stated the factual basis for his sentence and the reasons for imposition.
The record and PSI are replete with offenses. — albeit many were nolle prossed. The Prieur evidence and testimony of the victims, particularly the death threat, make defendant one of the worst offenders despite his first-offender status. State v. Bolden, 501 So.2d 942 (La.App. 2 Cir.1987). The trial judge did not abuse his broad discretion.
Defendant’s sentence relative to the aggravated kidnapping conviction is a mandatory life sentence. The decision to assess the imposition of mandatory life sentences is the prerogative of the legislature. State v. Williams, 445 So.2d 1264 (La.App. 3 Cir.), writ denied, 449 So.2d 1346 (La.1984); State v. Parker, 416 So.2d 545 (La.1982).[5] Defendant does not challenge the constitutionality of the statute and does not raise a cruel-and-unusual argument relative to the imposition of life sentences for the crime of aggravated kidnapping.
This assignment is also without merit.
The convictions and sentences of the defendant are affirmed.
AFFIRMED.

. State v. Prieur, 277 So.2d 126 (La.1973).

. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).

. This fact also supports a conclusion that it was harmless error — if any — for the trial court to deny defendant’s motion to sever. The same aggravated kidnapping evidence would have been used as other crimes evidence in a separate trial. These issues are addressed more fully in the discussion of Assignment of Error No. 2.

. For example, it could be used in part to demonstrate system with specific regard to the aspor-tation element of kidnapping crimes.

. See State v. Viree, 95-176 (La.App. 3 Cir. 3/6/96); 670 So.2d 733, writ denied, 96-0885 (La.9/20/96); 679 So.2d 431, for a recent case involving the same analysis for aggravated rape offenses.